UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

RICKY L. SIROIS, )
 )
 Plaintiff, )
 )
v. ) Docket no. 2:17-cv-324-GZS
 )
UNITED STATES, et al., )
 )
 )
 Defendants. )

**ORDER ON MOTION TO DISMISS**

Before the Court is Defendants' Motion to Dismiss (ECF No. 34). As explained herein, the Court GRANTS the Motion.

**I. LEGAL STANDARD**

Defendants' request for dismissal invokes Federal Rule of Civil Procedure 12(b)(1), which requires dismissal of claims over which this Court lacks subject matter jurisdiction, and Rule 12(b)(6), which allows the Court to dismiss a case if the plaintiff fails to state a claim upon which relief can be granted.

A federal court is obligated to ensure the existence of subject matter jurisdiction before considering the merits of any complaint. Plaintiffs generally bear the burden of demonstrating subject matter jurisdiction. See, e.g., Aversa v. United States, 99 F.3d 1200, 1209-10 (1st Cir. 1996). Faced with a motion to dismiss based on lack of jurisdiction, the Court may consider not only the sufficiency of the jurisdictional facts pled in the complaint, but also the additional materials submitted by either side that allow it to resolve the jurisdictional challenge. See Valentin

v. Hospital Bella Vista, 254 F.3d 358, 363-64 (1st Cir. 2001) (noting that "plaintiff's well-pleaded factual allegations . . . [may be] augmented by an explanatory affidavit or other repository of uncontested facts").

Once the Court determines it has jurisdiction over the asserted claims, the Federal Rules of Civil Procedure require only that a complaint contain "a short and plain statement of the grounds for the court's jurisdiction . . . a short and plain statement of the claim showing that the pleader is entitled to relief; and a demand for the relief sought." Fed. R. Civ. P. 8(a)(1)-(3). A viable complaint need not proffer "heightened fact pleading of specifics," but in order to survive a motion to dismiss it must contain "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).

In assessing whether a complaint adequately states a claim, the Court considers the "facts and documents that are part of or incorporated into the complaint." United Auto., Aerospace, Agric. Implement Workers of Am. Int'l Union v. Fortuño, 633 F.3d 37, 39 (1st Cir. 2011) (quotation marks omitted). But, the Court may also "supplement those facts with facts 'gleaned from documents incorporated by reference into the complaint, matters of public record, and facts susceptible to judicial notice.'" Gonzalez v. Velez, 864 F.3d 45, 48 (1st Cir. 2017) (quoting Haley v. City of Boston, 657 F.3d 39, 46 (1st Cir. 2011)). Likewise, when reviewing a *pro se* pleading a somewhat "less stringent" standard applies and the Court may consider other filings by the *pro se* litigant in order to "understand the nature and basis of his claims." Wall v. Dion, 257 F. Supp. 2d 316, 318 (D. Me. 2003) (internal citations omitted).

Under Rule 12(b)(6), the Court assumes the truth of the facts contained in the pleadings and draws all reasonable inferences in the plaintiff's favor. Schatz v. Republican State Leadership Comm., 669 F.3d 50, 55 (1st Cir. 2012). However, if the properly considered factual allegations

are "too meager, vague, or conclusory to remove the possibility of relief from the realm of mere conjecture, the complaint is open to dismissal." Haley, 657 F.3d at 46; see also Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (stating that a court need not accept "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements"). In short, a plaintiff must plead facts indicating "more than a sheer possibility that a defendant has acted unlawfully." Id.

## II. FACTUAL BACKGROUND

On January 7, 2014, Plaintiff Ricky Sirois was sentenced to a forty-eight-month term of imprisonment to be followed by a thirty-six month term of supervised release. See United States v. Mckenney, et al., 1:11-cr-00206-JAW, ECF Nos. 313, 315. As Sirois neared the end of his term of imprisonment in March 2015, he was transferred from the Fairton Federal Correctional Institution in New Jersey to Pharos House, a federal halfway house in Portland, Maine.[1]

Shortly after his transfer to Pharos House, Sirois was assigned the task of collecting trash around the house and bringing it to dumpsters behind the facility. On March 27, 2015, during his first trip to the dumpsters, Sirois slipped on ice and fell fracturing his right foot. The area where he fell had not been salted, sanded, or otherwise treated for ice. On March 28, 2015, the following day, Sirois obtained medical treatment, including x-rays of his foot, at the Brighton Medical Center. These x-ray images did not show a fracture.

Sirois subsequently complained about his foot and was given permission to see a podiatrist, who recommended that Sirois obtain an MRI of the foot and prescribed an air boot and non-narcotic pain medication. For the following three weeks, Sirois continued to complain to Pharos

---

[1] Pharos House is privately owned and operated by Halfway House, Inc., which, in turn, contracts with the Bureau of Prisons ("BOP") for the provision of community-based residential services for BOP inmates. See Fultz Decl. (ECF No. 33) ¶ 6 & Fultz Ex. B (ECF No. 33-2).

3

House staff members that there was something wrong with his foot, meeting with the Pharos House assistant director on five occasions. Sirois communicated to Pharos House staff that the podiatrist had recommended an MRI. Pharos House staff informed Sirois that they were waiting for authorization from the BOP to obtain a third-party MRI or to transfer Sirois to a federal correctional institution for medical care. Sirois continued to complain to staff at Pharos House about his foot and the BOP's delay. Sirois eventually met with Richard Farris, the director of Pharos House, the assistant director, and Sirois' caseworker about his foot. He again was told that Pharos House was waiting on authorization from the BOP. All told, Sirois' requests for additional medical attention were denied by Pharos House employees on six occasions.

On June 1, 2015, Sirois was released from Pharos House. He subsequently obtained an MRI of his foot at Maine General Hospital in Augusta, Maine. He was thereafter seen by Dr. Kipp, a podiatrist, who confirmed that Sirois' foot was fractured. Ultimately, Sirois did not have surgery on his foot until approximately eighteen months after his release from Pharos House. Sirois asserts that part of the reason for this delay was his conditions of supervised release, which required him to disclose to all medical providers that he had been convicted of an offense involving the selling of oxycodone.

On August 7, 2017, Judge Woodcock revoked Sirois' term of supervised release and sentenced him to twenty-four months of incarceration. See United States v. Mckenney, et al., 1:11-cr-00206-JAW, ECF Nos. 372, 374. Sirois filed his Complaint (ECF No. 1) on August 28, 2017.

On August 29, 2017, the BOP Northeast Regional Director first received a Regional Administrative Appeal (Case No. 913899-R1) from Sirois. In this appeal, Sirois alleged he was not provided medical care for his foot condition. On August 30, 2017, this administrative appeal (Case No. 913899-R1) was rejected without a substantive response because he did not first present an issue of concern to the Warden at the institutional level and thus there was no decision made

4

from which he could appeal.  See Barksdale Decl. (ECF No. 32) ¶ 20 & Barksdale Ex. C (ECF No. 32-3).  Sirois resubmitted his administrative appeal on September 26, 2017, but it was again rejected for the same reason.  See id. ¶ 21.

## III. DISCUSSION

Sirois' *pro se* Complaint is best construed as stating a constitutional claim based on the deliberate indifference to his medical needs, as well as a tort claims for the alleged negligence that led his March 27, 2015 slip and fall outside of Pharos House and the delays in medical care he received after this fall.  However, for reasons that follow, the Court concludes that all of these claims fail as to the named Defendants.

### A. Plaintiff's Claims for Constitutional Violations

To the extent that Sirois has attempted to state any claim for constitutional violations against the United States or the BOP, the Government is correct in its argument that such a claim is barred by the doctrine of sovereign immunity.  See F.D.I.C. v. Meyer, 510 U.S. 471, 475 (1994); Dynamic Image Techs., Inc. v. United States, 221 F.3d 34, 39 (1st Cir. 2000) ("As a sovereign nation, the United States is immune from liability except to the extent that it consents to suit.").  As a result, the Court concludes that it lacks subject matter jurisdiction over such a claim.  Limar Shipping Ltd. v. United States, 324 F.3d 1, 6 (1st Cir. 2003) ("Absent express waiver of sovereign immunity, federal courts lack subject matter jurisdiction over suits against the United States.").  Quite simply, the law only allows for a plaintiff seeking a remedy for violation of his constitutional rights to state a claim against individual federal employees, not the federal

government or federal agencies.[2]  See Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388 (1971);  Meyer, 510 U.S. at 484-86 (declining to extend Bivens actions to suits against a federal agency);  see also McCloskey v. Mueller, 446 F.3d 262, 271-72 (1st Cir. 2006) (holding that the Bivens doctrine "does not override bedrock principles of sovereign immunity so as to permit suits against the United States, [or] its agencies . . . .").

Given the applicable sovereign immunity limitations to this Court's jurisdiction, the Court must dismiss the Complaint to the extent it asserts claims for constitutional violations against the United States and the Bureau of Prisons.[3]

### B. Plaintiff's Claims for State Tort Violations

Turning to Sirois' negligence claims, such tort claims against the United States are generally allowed so long as the claim falls within the waiver of sovereign immunity found in the Federal Tort Claims Act ("FTCA").  "The FTCA is a limited waiver of [sovereign] immunity, giving federal courts jurisdiction over civil claims against the government for . . . injury 'caused by the negligent or wrongful act or omission of any employee of the Government . . . under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.'"  Sanchez v. United States, 740 F.3d 47, 50 (1st Cir. 2014) (quoting 28 U.S.C. § 1346(b)(1)) (additional quotations and citations omitted).  In other words, the FTCA allows a plaintiff to pursue a tort claim against the United States for the negligence of its employees.

---

[2] While the Complaint names numerous employees of the halfway house, the pleadings do not name any federal employee, nor does the Court read the pleadings to suggest that a particular unnamed federal employee violated Sirois' constitutional rights.

[3] The Court does not address the United States' alternative argument for dismissal based on Sirois' failure to timely exhaust his administrative remedies as required by 42 U.S.C. § 1997e.  See Defs. Mot. (ECF No. 34) at PageID #s 137-142.  Rather, the Court deems that argument withdrawn.  See Defs. Reply (ECF No. 39) at PageID # 154.

6

However, in this case, Sirois' claim rests primarily on the alleged negligence of employees of Pharos House, both in failing to adequately treat icy conditions and in failing to obtain timely approval for further follow-up testing of his foot injury. To the extent that Sirois asserts that the United States or Bureau of Prisons is vicariously liable for this negligence, the negligence claims hits an insurmountable hurdle in the FTCA's independent contractor exemption. See 28 U.S.C. § 1346(b)(1); see also Carroll v. United States, 661 F.3d 87, 93 (1st Cir. 2011) ("The FTCA expressly does not waive the government's immunity for claims arising from the acts or omissions of independent contractors."). This exemption bars Sirois' claim against the United States to the extent it seeks to hold the United States liable for the allegedly negligent acts of Pharos House. See, e.g., Logue v. United States, 412 U.S. 521, 527-28 (1973); Acosta v. U.S. Marshals Service, 445 F.3d 509, 514 (1st Cir. 2000) (holding that the FTCA's independent contractor exemption "excludes liability where the negligent treatment of a federal prisoner is the fault only of a non-federal facility holding the prisoner under contract").

Construing the allegations in the light most favorable to Sirois, the Court finds no plausible allegations that the United States exercised "day-to-day supervision and control" over the operation of Pharos House. Carroll, 661 F.3d at 95. In fact, the Complaint asserts that Pharos House employees approved Sirois' initial trip for medical care on March 28, 2015, and also apparently approved his follow-up trip to the podiatrist. See Compl. at PageID # 2. Even viewing Sirois' allegations under a more generous *pro se* standard, the Court does not read the Complaint as stating a viable negligence claim against the United States.[4] Having concluded that Sirois'

---

[4] To the extent that Sirois' Complaint can be read to allege that BOP negligently delayed approval of his request for an MRI, the Court similarly notes that the allegations suggest that Sirois only brought his request to Pharos House, not directly to BOP. Thus, as pled, any negligent delay could also be construed to fall within the independent contractor exemption.

7

negligence claim seeks to hold the United States liable for the alleged negligence of Pharos House, the Court concludes this tort claim is subject to dismissal for lack of subject matter jurisdiction. See, e.g., Gordo-Gonzalez v. United States, 873 F.3d 32, 37 (1st Cir. 2017) (affirming dismissal of negligence claims based on lack of subject matter jurisdiction when there was no applicable waiver of sovereign immunity).

Alternatively, the Court notes that to the extent Sirois' Complaint could be read to state a claim for negligence that is not barred by the FTCA's independent contractor exemption, any such claim would still fail based on Sirois' apparent failure to comply with the FTCA's requirement that he timely present an administrative claim within two years of his claim accruing. Specifically, there are two statutes that provide applicable prerequisites to bringing a complaint under the FTCA. First, there is an administrative exhaustion requirement:

> An action shall not be instituted upon a claim against the United States for money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail. The failure of an agency to make final disposition of a claim within six months after it is filed shall, at the option of the claimant any time thereafter, be deemed a final denial of the claim for purposes of this section.

28 U.S.C.A. § 2675(a). Second, there is a two-year time limit for presenting an administrative claim:

> A tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues or unless action is begun within six months after the date of mailing, by certified or registered mail, of notice of final denial of the claim by the agency to which it was presented.

28 U.S.C. § 2401(b). As the First Circuit itself has acknowledged, after United States v. Kwai Fun Wong, --- U.S. ---, 135 S. Ct. 1625 (2015), this two-year FTCA time limitation is "non-

jurisdictional and subject to equitable tolling." Holloway v. United States, 845 F.3d 487, 489 (1st Cir. 2017). However, having failed to allege that he has complied with both of these statutory requirements, Sirois' Complaint is alternatively subject to dismissal for failing to state a claim under FTCA.[5]

## VI. CONCLUSION

Therefore, the Court hereby GRANTS Defendants' Motion to Dismiss (ECF No. 34).

SO ORDERED.

                                           /s/ George Z. Singal
                                           United States District Judge

Dated this 9th day of May, 2018.

---

[5] The Court additionally notes that nothing in the record supports equitably tolling of Sirois' presentment requirement until August 29, 2017 or some later date. See Barksdale Decl. (ECF No. 32), PageID # 70 (explaining that there is no record of Sirois properly submitting an administrative tort claim related to his foot injury as of March 12, 2018, and that Sirois first attempted to file an administrative remedy claim with the BOP on August 29, 2017). In the Court's view, any negligence claim tied to the delay in getting an MRI of his foot would have accrued by the "end of June 2015 or beginning of July 2015," when Sirois acknowledges he obtained an MRI and was told he did have a foot fracture. Pl. Response (ECF No. 38), PageID # 150. As a result, the two-year time limit would require an administrative claim to have been presented no later than July 2017. See generally, e.g., Clutter-Johnson v. United States, 242 F. Supp. 3d 477, 482-486 (S.D. W. Va. 2017) (explaining the limits of equitable tolling under the FTCA).